439 A.2d 633

Donald John NATH, Jr., Appellant,

v.

NATIONAL EQUIPMENT LEASING CORPORATION,
Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1981.

Decided Dec. 17, 1981.

Reargument Denied Jan. 29, 1982.

Kenneth W. Behrend and Mark B. Aronson, Behrend, Aronson & Morrow, Pittsburgh, for appellant.

Daniel M. Berger, Pittsburgh, amicus curiae.

Randall J. McConnell and Dickie, McCamey & Chilcote, James R. Miller, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

NIX, Justice.[*]

This is an action in trespass brought in the Court of Common Pleas of Allegheny County, 282 Pa.Super. 142, 422 A.2d 868 in which appellant seeks to recover damages sustained from an injury suffered during the course of his employment. On March 29, 1972 the left hand of David John Nath, appellant, became caught in the gears and blades of a wire and cable stripping machine which did not provide a guard to protect the user's hands. Mr. Nath lost three fingers and part of the hand. His employer, Keystone Metals Company (now Keystone Resources) obtained the machine from the Rigby Manufacturing Company, which made it. Keystone asked appellee, National Equipment Leasing Corporation (National) to finance the purchase. Keystone had ordered the machine, bargained for the purchase price and received the initial invoice of $1,875.00.

Appellee borrowed money from the Pittsburgh National Bank (PNB) in order to provide the funds for Keystone's purchase. Rigby Manufacturing Company accommodated National's request to reinvoice the machine to show appellee as owner. Appellee then prepared a lease schedule for the machine and a financing statement to be filed in accordance with the security interest provisions of the Uniform Commercial Code. 13 Pa. C.S.A. §§ 1101 et seq. The lease was assigned to PNB as security in case National defaulted on its

---

[*] This case was reassigned to the writer on October 29, 1981.

loan obligation. The security statement showed National to be a secured party and Keystone a debtor. The machine was later sold by Keystone during the lease term (in March of 1975) to a company in California and the proceeds turned over to National. Appellant, in another action based upon the same injury, filed in the United States District Court for the Western District of Pennsylvania against Rigby Manufacturing Company, secured a verdict of $175,000.00.

On December 16, 1975, appellant's motion for partial summary judgment as to the applicability of the Restatement (Second) of Torts § 402A[1] to appellee was denied by a court *en banc*. That court concluded the appellate courts of Pennsylvania had not extended Section 402A to lessors. A week later, the lower court certified the case for appeal to the Superior Court, pursuant to 17 P.S. § 211.501. On January 5, 1976, the Superior Court denied appellant's Petition for Allowance of Appeal. Appellant then petitioned this Court for allowance of an appeal. On March 3, 1976 the petition was granted. On June 3, 1977, we remanded the case to the lower court, *Nath v. Nat'l Equipment Leasing Corp.*, 473 Pa. 178, 373 A.2d 1105 (1977) (*Nath I*), in view of the fact that

> [s]ubsequent to the action of the court below, [we] handed down... *Francioni v. Gibsonia Truck Corporation*, 472 Pa. 362, 372 A.2d 736... wherein we reasoned:

1. Section 402A of the Restatement (Second) of Torts provides:
   § 402A   Special Liability of Seller of Product for Physical Harm to User or Consumer
   (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

'What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public.'

Id. [472 Pa. at 367] 372 A.2d at 738.

Thus, in view of our holding that the strict liability of Section 402[A] is to be extended to a supplier of chattels, even though the marketing device employed is a lease, we now vacate the order denying the motions for partial summary judgment and remand the cause for further consideration in view of our opinion in *Francioni v. Gibsonia Truck Corporation, supra.* [Footnote omitted.]

*Id.* 473 Pa. at 180; 373 A.2d at 1106.

The question intended to be remanded in *Nath I* is whether the lease in question was in fact merely a financing device or whether it was a marketing device used by supplier of chattel. On remand the parties agreed to a trial *in limine.* Only the issue of whether the lease was a conventional, commercial one or a financial device was considered. The lower court found the lease to be a financing device and further concluded that under *Francioni* section 402A did not apply. As a result, the action was dismissed. The Superior Court affirmed the lower court and this appeal followed. Both courts' decisions are fully in accord with the principles announced by this Court in *Francioni.*

The issue presented by this appeal is whether Section 402A applies to a "lessor" under a secured transaction financing device. When we decided *Francioni v. Gibsonia Truck Corporation, supra,* conventional, commercial leases were clearly distinguished from those secured transactions termed "leases" for financing purposes. 472 Pa. at 369–70 n.3, 372 A.2d at 740 n. 3. We indicated in footnote 3 of *Francioni, supra,* the policy considerations operative in extending strict liability to a commercial or true lease are not present where the lessor neither markets nor supplies the product, but is merely a secured party.

Appellee contends that its lease arrangement with David Tesone Trucking Company was actually a method of fi-

nancing equipment and not a conventional, commercial lease. The essence of appellee's argument is that the rule of strict liability does not extend to finance lessors engaged in the business of finance leasing. We agree with the appellee that the finance lease is *sui generis* and that the policy considerations justifying an extension of the concept of strict liability to the true lease are not present when the lessor is not "marketing" or "supplying" the product but is, in fact, *merely a secured party, or financier*, whose collateral is the "product." The distinction between finance and conventional leasing has been described in the following manner:

> The finance lease and its variant, the leverage lease have brought into the leasing market men and financial institutions who are financiers rather than sellers. These lessors do not manufacture or sell the equipment they lease; instead, they purchase it for the lessee. That is, the equipment that is ordered by the lessee is purchased by the lessor and in turn rented to the lessee. The reasons are obvious when one considers tax advantages that are given to those who invest funds in equipment. Hawkland, *The Impact of the Uniform Commercial Code on Equipment Leasing*, 1972 U.Ill.L.F. 446, 449.

*See also* Comment, *Finance Lessor's Liability for Personal Injuries*, 1974 U.Ill.L.F. 154.

An additional distinction between conventional or "true" leases and finance or "security" leases is seen in the lessor-lessee relationship:

> The true lease is what is commonly meant by the word "lease". In theory, the lessor allows the lessee to use the equipment for some fraction of its useful life, but "fully expects to retake the chattel at the end of the lease term and either resell or re-lease it." The right to possession of the equipment upon default or expiration of the lease may be termed the "equipment reversion."
>
> The security lease may be thought of as a "disguised" security agreement, a secured installment sales contract,

or a lease "intended as security." Although the security leasing agreement is written in lease form, the security lessor does not expect to retake the goods at the end of the lease period but instead to transfer full ownership to the "lessee" for a minimal sum. Note, *In re Leasing Consultants*, 84 Yale Law Journal 1722, 1723 (1975) (footnotes omitted).

It is, therefore, a question as to whether the lessor is, in fact, *supplying* the particular chattel or whether he is offering the use of money. In the former instance, it is the supplier who selects the produce and places it in the stream of commerce. In the latter situation, it is the "lessee" who chooses the product he wishes to use for his purposes. . . .

*Francioni v. Gibsonia Truck Corp., supra,* 472 Pa. at 369–70 n. 3, 372 A.2d at 740 n. 3.

It is clear from *Francioni* that there was no intention of extending the coverage of Section 402A to transactions that are designed solely for financing purposes. The factors pertinent to our determination to extend Section 402A coverage to lessors in the business of leasing products to the public were:

(1) In some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) As in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) The lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) The lessor can distribute the cost of compensating for injuries resulting from defects by charging for it in his business, i.e., by adjustment of the rental terms.

472 Pa. at 368–69, 372 A.2d at 739.

Appellant attempts to question the wisdom of rejecting the application of Section 402A in situations such as here presented. He asserts that the above criteria have been met. We cannot agree. Section 402A which provides for a form of strict liability is, of course, not predicated upon

"fault" or "negligence." That which provides the basis for fastening liability upon suppliers of products is that the supplier or manufacturer is the one that has the control over the product and places it within the stream of commerce. The party merely financing the transaction has no control over its manufacture, is not involved in the selection of the product nor in any way makes a representation as to its quality or soundness. Between the financier and the ultimate purchaser, it is usually the latter who selects the goods, negotiates for its purchase and has control over its use.

While it is true that the financing makes the purchase possible, and to that limited extent the financier can be perceived to have participated in the delivery of the product, such a tangential participation in the supplying of the goods does not justify the imposition of strict liability. As noted, the financier is not supplying the chattel but rather is offering the use of money.

It would be novel indeed to suggest that financing agencies should be responsible for detecting defects in the products financed. Such a result would have catastrophic impact upon commerce. Financing institutions are not equipped to pass upon the quality of the myriad of products they are called upon to finance nor do they have direct impact upon the manufacturing process of the product to exercise quality control. Finally, their relationship with a particular manufacturer does not, in the normal course, possess the continuity of transactions that would provide a basis for indirect influence over the condition and the safety of the product.

Nor are we impressed by the fact that the security agreement may provide for the financier to gain possession of the product in the event of default. Here, again, it is obvious that the financier's control over the product is in no way related to the safety of the product but rather is contingent upon the compliance with the terms of the financing agreement.

In the instant case, appellee's participation in the chain of events was tangential. Its financing role was not substantial in the creation of an undue risk of harm. This finance

lessor was not able to, nor would it have been in a position to, effect or oversee the safety of the product. In terms of the chain of events, National's relationship to the product was identical with that of PNB. The product was mere collateral. A finance lessor is not in the business of selling or marketing merchandise. A finance lessor is in the business of circulating funds. Such an activity cannot possibly produce reasonable reliance upon the safety of the merchandise. For the foregoing reasons, a finance lessor's role in the chain of events does not provide a predicate upon which the imposition of strict liability can rest for a defective product.

The Order of the Superior Court is affirmed.

LARSEN J., filed a dissenting opinion in which FLAHERTY and KAUFFMAN, JJ., joined.

LARSEN, Justice, dissenting.

The question decided today is whether strict liability under the Restatement (Second) of Torts § 402A [1] extends to those institutions which provide products to the public under financing leases.

The appellant suffered injury while working on a machine which had been leased to his employer by appellee, and appellant thereupon instituted suit, in the Court of Common Pleas of Allegheny County, to recover damages from appellee. A theory of liability asserted, *inter alia*, was that of strict liability under § 402A of the Restatement (Second) of

1. § 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer
   (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Torts. The specific allegation in appellant's complaint is that appellee leased or rented to appellant's employer, under a contract captioned "Equipment Lease", a wire and cable stripper, which machine was unreasonably dangerous in that it lacked a guard to protect a user's hands from the machine's cutting edges.

Appellant then filed a Motion for Partial Summary Judgment, requesting the trial court to rule that appellee was a "lessor-sellor under Section 402A of the Restatement of Torts 2d." Although a court en banc denied the motion, the trial court certified the matter to the Superior Court, since the trial court had concluded that the controlling questions of whether § 402A extended to lessors was one as to which there was a substantial difference of opinion. After an affirmance by the Superior Court, we granted appellant's petition for appeal and thereafter remanded the case to the trial court for further consideration, in light of our then-recently decided *Francioni v. Gibsonia Truck Corporation*, 472 Pa. 362, 372 A.2d 736 (1977), wherein we stated that "[W]hat is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public."

Upon remand, the parties agreed to a trial *in limine*, limited to the issue of whether the lease in question was a commercial lease or a finance lease. The trial court concluded that the lease was a finance lease and that strict liability under 402A did not apply. The Superior Court affirmed and we granted appellant's petition for appeal.

The principal basis for distinguishing between the legal consequences, in the context of strict liability, flowing from a financial lease as opposed to a commercial lease is stated in appellee's brief:

When a lessor does not participate in the decision on specifications, selection, order, or delivery of the product, has advanced funds to the lessee to enable the lessee to be in a position to later purchase the product, and has retained a security interest to secure its loan of money, the

policy behind section 402A should not apply to such a lessor.

Or as stated elsewhere in appellee's brief: "It is the class of 'lessors' who are presumed to have that special knowledge of the product which justifies the imposition of the doctrine of strict liability."

The elements reflected in the above statements are clearly keyed to "fault" or "negligence" concepts, and as such are at sharp variance with our clearly enunciated guidelines for strict liability. *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). Furthermore, as this Court had occasion to reiterate in *Francioni v. Gibsonia Truck Corporation, supra*, I find compelling Justice Traynor's observation: ". . . public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal.2d 453, 462, 150 P.2d 436, 440 (1944) (concurring opinion).

It is beyond dispute that in Pennsylvania the imposition of strict liability has been premised upon the need to relieve consumers of a burden which may be intolerable to one upon whom caprice has placed it and to shift that burden to those whose business it is to traffic in commerce. Nor am I persuaded that those who facilitate the placing of goods in commerce by providing indispensable funds for the purchase and subsequent financial leasing of goods play a role any less critical to hazard creation than such others as job wholesalers. The circumstance that wholesalers, financial lessors, and (often) retailers have little or no opportunity to inspect goods in which they deal is inconsequential, since strict liability is imposed without reference to whether caution was exercised or disregarded, if *in fact* the product was defective.

In Pennsylvania, we have consciously and consistently rejected an approach to strict liability which is predicated upon any element of fault, knowledge of trading parties (or

lack thereof), consumer expectations, or other elements alien to defendant identification on bases other than their participation *at any stage* in the manufacture or marketing (in any fashion) of products. It is those parties-participant who have the capacity to spread the costs of injury over society at large and relieve those innocent victims of a defective product of what may be disastrous financial consequences. To afford a shield for institutions which play a vital and continuing role in product marketing would be to retreat from our basic and informing premise. Given the frequently indispensable role played in the marketing scheme by finance lessors, no justification can be advanced for affording the financial lessor the uniquely privileged position here urged by appellee.

The pertinent factors cited in *Francioni v. Gibsonia Truck Corporation, supra,* 472 Pa. 362, 368–369, 372 A.2d 736, 739 for extending Section 402A coverage to lessors are no less present and no less compelling in the context of financial leases. The availability of the lessor for redress, the incentive to safety, the possible prevention of the circulation of defective products, and finally cost-distribution for injuries sustained are all factors dictating 402A coverage no less for financial lessors than for commercial lessors, wholesalers, or retailers. Indeed I would expect that inclusion of finance lessors would enhance the likelihood of realizing these objectives, because of the greater number and diversity of interested parties.

For these reasons, I would reverse the order of the Superior Court which affirmed the common pleas court's conclusion that appellee, as a finance lessor, was not within the scope of strict liability under Section 402A of the Restatement (Second) of Torts, and I would remand the case for further proceedings consistent with this conclusion.

FLAHERTY and KAUFFMAN, JJ., join in this dissenting opinion.