### In re PCH ASSOCIATES, f/k/a Simon Associates, Debtor.

### LIONA CORPORATION, N.V., Appellant,

v.

### PCH ASSOCIATES, Appellee.

#### No. 86 Civ. 392 (CHT).

United States District Court, S.D. New York.

May 15, 1986.

---

Winick & Rich, P.C., New York City, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa. (Jeffery N. Rich, New York City, Michael L. Temin, Patrick Matusky, Philadelphia, Pa., of counsel), for appellant.

Gelberg & Abrams, New York City (Marc S. Kirschner, Darren H. Goldstein, of counsel), for appellee.

## OPINION

TENNEY, District Judge.

This is an appeal from an order of the bankruptcy court, Lifland, J., holding that the instant parties, PCH Associates ("PCH") and Liona Corporation ("Liona") are joint venturers. The only question presented for review is whether the transaction at issue here created a landlord/tenant relationship between the parties or a joint venture. The Court affirms the bankruptcy court's decision for the reasons set forth below.

## BACKGROUND

The facts of this case are set forth at length in the bankruptcy court's opinion, and will not be repeated here. *See* 55 B.R. 273, 274–75. A few pertinent facts will suffice.

PCH owns and operates the Philadelphia Centre Hotel ("hotel") in Philadelphia and, prior to 1981, PCH held title to both the hotel and the land upon which it is situated.[1] In 1981, PCH and Liona entered into a "Sale-Leaseback Agreement" ("Agreement") and a "lease" ("Ground Lease"), whereby Liona purportedly purchased the land upon which the hotel is situated, and PCH agreed to lease the land back from Liona.

In 1984, PCH filed a petition for reorganization under the bankruptcy laws,[2] and, since that date, has operated the hotel as a debtor-in-possession.[3] Liona filed an application with the bankruptcy court pursuant to Code §§ 365(d)(3) and (4) seeking an order directing PCH to continue paying rent to Liona according to the terms of the Ground Lease.[4] PCH subsequently instituted an adversary proceeding seeking a determination that the transaction between Liona and PCH constituted a joint venture, rather than a true sale and leaseback arrangement. The bankruptcy court considered the actions together.

After a five day hearing, the court concluded that the parties intended to create a joint venture, and that the documents at issue did not constitute a true contract of sale or a true lease. *See* 55 B.R. at 283. The court therefore concluded that, as a joint venturer and absent a true lease, Liona was not entitled to collect rent from PCH under Code § 365. Liona now appeals that decision.

## DISCUSSION

### 1. *Standard of Review*

Liona contends (1) that this action is not a "core" proceeding as defined by the bankruptcy laws, and therefore is subject to de novo review by the district court; and (2) that the determination of whether there is a joint venture is a question of law, not fact, and therefore is fully reviewable on appeal. Both arguments are without merit.

Core proceedings are statutorily defined as including actions for the "allowance or disallowance of claims against the

---

1. Neither PCH nor Liona actually took part in the initial transaction. PCH (who owns the hotel) was formerly known as Simon Associates. The land involved here was sold to Purchase Estates, Ltd., whose interest was ultimately assigned to Liona. A full discussion concerning the actual parties involved in the transaction and their relationship to PCH and Liona is set forth in the bankruptcy court's opinion. *See* 55 B.R. at 274–75. For purposes of simplicity, the instant decision will refer to PCH and Liona as being the parties to the transaction.

2. PCH filed for reorganization under § 301 of the Bankruptcy Reform Act of 1978 ("Code"), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984.

3. *See* Code §§ 1107 and 1108.

4. *See* 55 B.R. at 274 n. 1. Code § 365(d)(3) requires that a debtor in possession timely perform all obligations under an unexpired lease of nonresidential real property until the lease is assumed or rejected. Section 365(d)(4) provides that if the lease is not timely assumed or rejected, it is deemed rejected and the nonresidential real property must immediately be surrendered to the lessor. *Id.*

estate." 28 U.S.C. § 157(b)(2)(A). In this instance Liona asserted a claim for rent against the estate. As previously noted, Liona asked the bankruptcy court to direct PCH to perform its obligations under the Ground Lease as required by Code §§ 365(d)(3) and (4). In order to determine PCH's obligations, the court first had to determine whether, in fact, a true lease existed for the purposes of Code § 365. Since the case at bar involves a claim against the estate and the claim arose under the Code, it is clear that this case is a core proceeding and must be reviewed as such.

Liona also argues that this issue involves a question of law, and is therefore fully reviewable by the court. PCH contends that the bankruptcy court's decision was based on findings of fact concerning the parties' intentions and, therefore, the court's decision cannot be set aside unless it is clearly erroneous. After a careful review of the record, the Court is convinced that the decision should be affirmed under either standard of review.

■ Although it is not necessary to decide whether the de novo standard or the clearly erroneous standard of review should be applied, since the result would be the same under either standard, it appears that the clearly erroneous standard is the correct one. Under Pennsylvania law,[5] the question of "whether a joint venture exists is a question of fact." *Wilkins v. Heebner,* 331 Pa.Super. 491, 480 A.2d 1141, 1144 (Pa.Super.Ct.1984); *see also Keeler v. International Harvester Used Truck Center,* 317 Pa.Super. 244, 463 A.2d 1176, 1178 (Pa.Super.Ct.1983) ("[T]he question of whether a joint venture existed in this case should have been submitted to the jury."). Since the bankruptcy court based its decision primarily on findings of fact concerning the parties' intent, the circumstances surrounding the negotiations, and the economic substance of the transaction, the

court's findings are binding unless clearly erroneous. *See* Fed.Bankr.R.Proc. 8013.

Liona contends, however, that the issue is solely a question of law because the case revolves around the construction and interpretation of a contract. In support of its position, Liona relies on *Sun Oil Co. v. Commissioner,* 562 F.2d 258 (3d Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), in which the Third Circuit reaffirmed the rule that the interpretation and construction of a contract which is clear on its face is a question of law. *Id.* at 262. The court held that when the documents at issue are unambiguous and complete, characterizing the true nature of the transaction constitutes a question of law which is fully reviewable on appeal. The court, however, also noted that "where the documents are ambiguous or incomplete ... the court's determination of the [parties'] unexplained subjective intent is a finding of fact." *Id.*

In the case at bar, the bankruptcy court concluded, and this Court agrees, that the instruments at issue were not clear or unambiguous. The bankruptcy court therefore looked to the parties' subjective intent.[6] Since a determination concerning intent is a finding of fact, the clearly erroneous standard must be applied on review. Nevertheless, as stated above, the Court is convinced that the result would be the same even if a de novo standard of review were applied.

### 2. *Extrinsic Evidence*

Liona contends that the bankruptcy court erred in admitting extrinsic evidence. The bankruptcy court concluded that the documents at issue—the Sale/Leaseback Agreement and the Ground Lease—are ambiguous because they are reasonably susceptible to more than one interpretation. *See* 55 B.R. at 280 ("[T]he court is unable to find ... undistorted clarity of expression in the Ground Lease."). The Court agrees.

---

5. The law of Pennsylvania governs in this case. *See* 55 B.R. at 277.

6. The bankruptcy court correctly concluded that the documents at issue in the instant case are ambiguous. See the discussion *infra* concerning admission of extrinsic evidence.

Liona argues that under Pennsylvania law the parol evidence rule prohibits introduction of extrinsic evidence to vary or alter the terms of the pertinent instruments. *See Scott Bryn Mawr Arms, Inc.,* 454 Pa. 304, 312 A.2d 592, 594 (1973). Although this is a correct statement of the law, it has no effect on the case at bar. In this instance, parol evidence was not introduced in order to vary or alter the terms of the instruments, but rather it was introduced in order to clarify the true nature of the instruments.

■ Even though an instrument may be called a lease, and may look like a lease, it does not necessarily follow that the instrument is in fact a true lease. *See Nath v. National Equipment Leasing Corp.,* 282 Pa.Super. 142, 422 A.2d 868, 873–75 (Pa.Super.Ct.1980), *aff'd,* 497 Pa. 126, 439 A.2d 633 (1981); *Matter of Candy Lane Corp.,* 38 B.R. 571, 575 (Bankr.S.D.N.Y.1984); *In re Winston Mills,* 6 B.R. 587, 593 (Bankr.S. D.N.Y.1980). *See also Kowatch v. Atlantic Richfield Co.,* 480 Pa. 388, 390 A.2d 747, 749 (1978) ("[E]ven though the parties captioned the writing in a manner suggesting a landlord/tenant relationship ... the writing ... embodies a franchise."). If two parties draw a picture of an animal that has four legs and a tail, and the parties agree to label it "A Horse," it would be reasonable to conclude that the picture is in fact a drawing of a horse. If, however, the animal not only has four legs and a tail, but also has large floppy ears and a long trunk in place of a nose, then it would be unclear whether the parties actually intended to draw a horse or whether they meant to draw something else—i.e., an elephant.

■ In that situation, parol evidence could be introduced—not to change the drawing in any way—but simply to clarify what the drawing was intended to be, an elephant or a horse. The same is true in the case at bar. Although at first glance the Agreement and Ground Lease appear to create a sale and leaseback arrangement, the parties included certain provisions which are not ordinarily found in such instruments. Thus, extrinsic evidence was properly admitted in order to clarify what the parties intended to create. *See In re 716 Third Ave. Holding Corp.,* 340 F.2d 42, 47 (2d Cir.1964), *cert. denied sub nom. A.G. Assoc., Inc. v. Cross,* 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965); *Matter of Anton's Lounge & Restaurant, Inc.,* 40 B.R. 134, 136 (Bankr.E.D.Mich.1984).[7]

### 3. *Expert Testimony*

Liona contends that the bankruptcy court erred in relying on the expert testimony of Richard A. Bernstein ("Bernstein"), one of the individuals originally involved in negotiating the transaction at issue here. Although Liona does not dispute Bernstein's qualifications as a real estate expert, Liona argues that Bernstein improperly testified as to legal matters which are solely the province of the court. The Court disagrees.

The trial court has broad discretion in determining whether expert testimony should be admitted or excluded, and the court's action is to be sustained on review unless it is manifestly erroneous. *See Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir.1979); *see also* 3 *Weinstein's Evidence* ¶ 704[02] at 704–16 (1985) ("[E]xclusion on 704 grounds [of testimony as to a legal issue] is almost never justified."). In the instant case, Bernstein essentially testified in a dual capacity: (1) he testified as one of the

---

7. Liona also argues that extrinsic evidence is inadmissible because § 3.10 of the Ground Lease states that the relationship between the parties is a landlord/tenant relationship. Section 3.10 states in relevant part that "[Liona] shall in no event be construed or held to be a partner or associate of [PCH] in the conduct of its business ... [and it is] agreed that the relationship between the parties hereto is ... that of Landlord and Tenant. That provision, however, does not bar the court from examining and determining the character of the instrument. *See Nath v. National Equipment,* 422 A.2d at 873–75. In *Nath,* the court ruled that extrinsic evidence concerning the circumstances surrounding the transaction was admissible despite an almost identical provision in the equipment lease which was at issue in that case.

individuals involved in the negotiations, and he addressed the question of the parties' intentions; and (2) he testified as an expert concerning whether certain provisions found in the Agreement and Ground Lease were customarily included in a true contract for sale or a true lease.

■ Based on his participation in the negotiations, Bernstein testified that the parties intended to create a joint venture. That testimony did not constitute a legal conclusion since it was merely Bernstein's understanding and recollection of what took place during the negotiations. Having taken part in those negotiations, Bernstein was qualified to give that testimony.

It is evident that Liona failed to take into account Bernstein's dual capacity. Liona is essentially arguing that when Bernstein testified that the parties intended to create a joint venture, Bernstein was giving a legal conclusion. That testimony, however, merely pertained to his personal memory and understanding of the parties' intentions. Liona, of course, was entitled to produce witnesses and evidence to contradict or undermine Bernstein's testimony. His testimony, however, was unrebutted.

Bernstein also testified as a real estate expert, and Liona does not challenge his expertise. Bernstein testified that certain provisions contained in the agreement are not ordinarily included in a true lease or contract for sale. That testimony was based on his experience in the real estate industry, and, as an expert in the field, he was qualified to give such testimony. *See Nuvest, S.A. v. Gulf & Western Ind., Inc.*, 649 F.2d 943, 950 (2d Cir.1981) (admitting testimony as to whether specific warranties were normal or customary); *Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 737 (9th Cir.1980) (approving expert testimony concerning the type of agreements customarily found in the relevant industry); *Marx & Co., Inc. v. Diners Club, Inc.*, 550 F.2d 505, 509 (2d Cir.1977), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) (admitting expert testimony concerning the ordinary practices of those engaged in the pertinent industry); *see also First National State Bank v. Reliance Electric Co.*, 668 F.2d 725, 731 (3rd Cir.1981) (admitting expert testimony concerning whether certain conduct was within the established industry custom); *Moore v. Tristar Oil & Gas Corp.*, 528 F.Supp. 296, 310 (S.D.N.Y. 1981) (permitting expert testimony to explain technical contract terms). In light of the wide discretion afforded the trial court, it was proper to admit and rely on Bernstein's expert testimony.

### 4. *Joint Venture or Lease ?*

The fact that the instant transaction was cast in the form of a sale and leaseback, does not prevent the court from scrutinizing the transaction to determine its true nature. As previously discussed, it is the substance of the transaction, rather than its form, that is significant. *See Sun Oil Co. v. Commissioner*, 562 F.2d at 263 ("[W]e look to the economic realities of the lease and not to the labels applied by the parties."); *Nath v. National Equipment Leasing Corp.*, 422 A.2d at 873 n. 8; *In re Keydata Corp.*, 18 B.R. 907, 909 (Bankr.D. Mass.1982). In determining what rights and obligations exist between the parties, the court "will not be prevented from exercising [its] function of judicial review by the form of words the parties may have chosen." *Matter of Candy Lane Corp.*, 38 B.R. at 575.

Under Pennsylvania law four factors are essential to a joint venture:

1. Each party must make a contribution to the venture, by way of either capital, services or something comparable;

2. The transaction must be a single business transaction rather than a continuous one;

3. The parties must share profits; and

4. The parties must have a joint proprietary interest and right of mutual control over the subject matter of the enterprise.

*See Beavers v. West Penn Power Co.*, 436 F.2d 869, 873 (3rd Cir.1971); *McRoberts v.*

*Phelps,* 391 Pa. 591, 138 A.2d 439, 443–44 (1958); *Wilkins v. Heebner,* 480 A.2d at 1144.

It is undisputed in the instant case that both parties made a contribution and that there was a single transaction rather than a continuous one. Thus, there is no dispute concerning the first two factors.[8] Liona argues, however, that the third and fourth factors, concerning profit and control, are not satisfied.

Liona contends that the third element is not satisfied because the parties did not agree to share net profits. The Ground Lease, however, provides that beginning in the fourth year of the lease, PCH is to pay a "percentage rent" based upon all increases in gross revenue from room and commercial space rental, and sale of food and beverages.[9] The bankruptcy court found that this provision satisfied the third factor. Pointing out that the parties had agreed to share in the cash flow of the hotel, the court held that it did not matter whether the profits were net profits or gross profits.

Liona also contends that the fourth factor, concerning proprietary interest and mutual control, is not satisfied. Liona concedes that there are provisions in the documents which give a certain amount of control to Liona, but argues that those provisions were included simply to protect Liona's ability to collect the percentage rent that had been established.

The court found that the fourth factor—concerning control—was satisfied by the provisions set forth in the documents. In support of its conclusion, the court lists six provisions in the lease which establish the requisite control: (1) Liona's access to financial records; (2) the right to veto certain decisions; (3) Liona's rights and obligations in connection with insurance; (4) the need for Liona's consent before PCH can transfer ownership of the hotel; (5) Liona's right to perform any mandated act PCH failed to perform; and (6) Liona's right to perform any obligations arising from a mortgage that PCH fails to perform.[10]

Based on the circumstances surrounding the negotiations and the economic substance of the transaction, the bankruptcy court found that the parties intended to impose obligations and confer rights that were significantly different from those ordinarily arising from a landlord/tenant relationship. After reviewing the record, the Court concludes that the bankruptcy court is correct.

The parties essentially agreed to pool their resources in order to make a profit from the hotel. Liona did not assume the normal risks and responsibilities of a landlord, nor did Liona undertake certain obligations ordinarily assumed by a purchaser.[11] Furthermore, the "rent" which was

---

**8.** The elements of a joint venture are nearly identical to those of a partnership. The principal differance is that a joint venture is ordinarily formed for a single transaction rather than an extended business operation. *See Snellbaker v. Herrmann,* 315 Pa.Super 520, 462 A.2d 713, 716 (Pa.Super.Ct.1983).

**9.** Liona argues that this provision does not establish a sharing of profits; but rather it merely creates an obligation to pay rent.

**10.** The "rent" provision, and the "control" provisions in the Agreement and Ground Lease support Liona's argument that the transaction constituted a true sale and leaseback arrangement. Liona's argument is also supported by the fact that the documents are denominated as being a contract of sale and a ground lease. *See Fox v. Peck Iron and Metal Co., Inc.,* 25 B.R. 674, 688 (Bankr.S.D.Cal.1982) ("[T]here is a strong presumption that a deed and lease ... are what

they purport to be."). In addition, the parties are named as seller and purchaser, and landlord and tenant. Thus, if the only evidence presented were the documents, the bankruptcy court may very well have determined that the transaction created a landlord/tenant relationship. However, the record considered as a whole supports the bankruptcy court's conclusion.

**11.** Liona also asserts that the bankruptcy court was collaterally estopped from considering the question of the true nature of the transaction, because another court treated the Ground Lease as being a true lease in an earlier proceeding. *See Westinghouse Electric Corp. v. Liona Corp. N.V. and PCH Assoc.,* No. 238 L, Slip Op. (Phila. C.C.P. Dec. 29, 1984). The plaintiff in that action was seeking to impose a mechanic's lien on the property on which the hotel is situated, in order to obtain payment for work done in renovating the hotel. In holding that the plaintiff

to be paid pursuant to the terms of the Ground Lease, was designed to ensure that Liona obtained a certain return on its investment, rather than being calculated to compensate Liona for the use of the property.[12]

Numerous factors support the conclusion that the transaction was a joint venture, e.g.: (1) the amount of money Liona paid for the land was not based on a market rate, but rather was based on the amount of money needed to make the venture work; (2) Liona did not take on many of the traditional burdens of a landlord, and the "rent" was not determined merely as reasonable compensation for use of the property, but rather the rate was fixed to ensure an adequate return on Liona's investment; (3) the lease could have run for up to 165 years, an unusually long period of time, and Liona had no interest in any appreciation in the value of the land during that period of time since the rent was fixed; (4) Liona was entitled to recover its investment if the hotel was refinanced; and (5) PCH had the power to pre-pay Liona's investment.

Despite the factors listed above, Liona contends that the court's conclusion was wrong. Liona contends that its purpose in entering into the instant transaction[13] was threefold: (1) Liona wanted a substantial return on its investment; (2) Liona did not want to be responsible for the actual management of the hotel; and (3) Liona wanted to own a tangible asset. Both parties agree that PCH wanted to obtain any tax benefits that would result from the ownership and operation of the hotel. Liona argues that the only way to achieve these goals was through a landlord/tenant relationship and, therefore, the parties could not have intended to enter into a joint venture. This argument, however, does not withstand scrutiny.

■ First, Liona's desire to own a tangible asset could be satisfied by either a sale and leaseback arrangement or a joint venture, since Liona would have some type of ownership in either instance. Second, Liona's desire to avoid daily management could be satisfied by either arrangement since entering into a joint venture does not require the parties to share mutual control of every aspect of the venture. *See Hellenic Lines v. Commodities Bagging & Shipping*, 611 F.Supp. 665, 679 (D.C.N.J. 1985). Indeed, entering into a joint venture better serves Liona's goal by eliminating the responsibilities ordinarily assumed by a landlord, while providing the right to maintain control over certain aspects of the venture. Third, Liona's objective of receiving a substantial return on its investment could be satisfied by a joint venture, and, in fact, a joint venture was apt to provide a greater return than a landlord/tenant arrangement would. As previously noted, the parties agreed on a fixed rate of return, which was not tied to the market value of the land or to the services rendered by the "landlord." *See* 55 B.R. at 276.

■ Taking this reasoning one step further, it appears that PCH's objective of obtaining certain tax benefits could only be achieved if a landlord/Tenant relationship existed. Indeed, it appears from the record that the transaction was structured as a sale and leaseback so that PCH could take advantage of certain tax benefits. As one court noted, there are often "strong motivations which induce parties to resort to a

could not file such a lien, the court treated the Ground Lease as a true lease, and described the relationship between Liona and PCH as being a landlord/tenant relationship. The issue presented in the instant case, however, was not presented in the *Westinghouse* case, and the court did not consider whether the transaction constituted a joint venture. Thus, the *Westinghouse* case has no collateral estoppel effect on the instant matter. *See In re Victory Pipe Craftsmen, Inc.,* 12 B.R. 822, 823 (Bankr.N.D.Ill.1981).

12. *See In re Nite Lite Inns,* 13 B.R. 900, 908 (Bankr.S.D.Cal.1981).

13. As previously noted in footnote 1, although Liona was not a party to the original transaction, for purposes of simplicity the parties involved are simply identified as Liona and PCH rather than naming their predecessors in interest. *See infra* note 1, and 55 B.R. at 274–75.

subterfuge of clothing [one instrument] in the guise [of another]''. *In Re 716 Third Ave.*, 340 F.2d at 47; *see Winston Mills*, 6 B.R. at 596 n. 11. Thus, an examination of the parties' stated goals supports the conclusion that the parties intended to enter into a joint venture to accomplish their purposes, despite the fact that they cast the transaction in the form of a sale and leaseback.

In sum, although many of the provisions in the documents would support a finding that the transaction constituted a sale and leaseback arrangement, the record clearly supports the bankruptcy court's conclusion that the transaction was actually a joint venture. Accordingly, the bankruptcy court's decision is affirmed.

So ordered.