DE LAGE LANDEN FINANCIAL
SERVICES, INC., Appellee

v.

Inna ROZENTSVIT, M.D., Appellant.

De Lage Landen Financial Services,
Inc., Appellant

v.

Inna Rozentsvit, M.D., Appellee.

Superior Court of Pennsylvania.

Argued Oct. 31, 2007.
Filed Dec. 19, 2007.

Thomas G. Wolpert, Royersford, for Rozentsvit.

Michael J. McCaney, Jr., Blue Bell, for De Lage Landen.

BEFORE: STEVENS, GANTMAN, JJ., and McEWEN, P.J.E.

OPINION BY GANTMAN, J.:

¶ 1 The parties, Inna Rozentsvit, M.D. ("Dr. Rozentsvit") and De Lage Landen Financial Services, Inc. ("DLL"), appeal and cross-appeal from the judgment entered in the Chester County Court of Common Pleas, in favor of DLL in its breach of contract action. We affirm in part but vacate and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this appeal are as follows. DLL is in the business of financing leased office equipment. On November 29, 2004, DLL entered into a finance lease agreement with Dr. Rozentsvit for a medical ultrasound system. DLL agreed to buy the ultrasound system from a third-party vendor, Diagnostic Ultrasound ("Vendor") and lease it to Dr. Rozentsvit. The lease called for Dr. Rozentsvit to make sixty payments of $348.00 per month to DLL. Additionally, Dr. Rozentsvit signed a guaranty provision contained in the lease, which made her also a guarantor on the

lease. Dr. Rozentsvit made five payments on the lease and ceased making payments thereafter.

¶ 3 On February 1, 2006, DLL filed a breach of contract complaint against Dr. Rozentsvit. DLL demanded judgment in its favor in the amount of $18,260.42 on the lease and requested pre-judgment and post-judgment interest and counsel fees per the agreement. Dr. Rozentsvit filed an answer and new matter on June 5, 2006. In her new matter, Dr. Rozentsvit asserted DLL's claims were barred by the affirmative defense of failure of consideration, because Dr. Rozentsvit did not receive the "Scanpoint" software package needed to operate the ultrasound system.

¶ 4 The parties proceeded to compulsory arbitration on August 8, 2006. The arbitrators entered an award in favor of Dr. Rozentsvit and against DLL. On August 18, 2006, DLL filed a notice of appeal from the arbitrators' award. The trial court conducted a bench trial on November 16, 2006. On November 21, 2006, the court found in favor of DLL in the amount of $18,260.42.

¶ 5 Dr. Rozentsvit timely filed a post-trial motion on November 30, 2006. In her motion, Dr. Rozentsvit asserted she had entered into the lease agreement "for an entire system for health care diagnosis, specifically bladder diagnostic ultrasound, which was comprised of software …, hardware, an internet connection and access to Vendor, and [ultrasound gel] materials, all designed to work in concert." (Motion for Post–Trial Relief, filed 11/30/06, at 2). Because Dr. Rozentsvit did not receive the software, she argued that "the consideration which did not pass was exactly the consideration contemplat-

ed by [Dr. Rozentsvit] in entering into the [l]ease." (*Id.* at 4). Dr. Rozentsvit concluded DLL had failed to substantially perform, which justified her failure to make additional payments. Based upon the foregoing, Dr. Rozentsvit requested that the court vacate its verdict and enter judgment in her favor.

¶ 6 On December 8, 2006, DLL timely filed a post-trial motion in the nature of a petition to assess collection and legal costs. In its petition, DLL contended the lease contained a remedies provision. Pursuant to this provision, DLL claimed entitlement to "reasonable collection and legal costs, but only to the extent permitted by law…." (Petition to Assess Collection and Legal Costs, filed 12/8/06, at 2). DLL asserted it had incurred $6,898.00 of collection costs in the form of counsel fees. Therefore, DLL asked the court to mold the verdict to include the collection costs in the form of counsel fees. On December 26, 2006, Dr. Rozentsvit filed a response and memorandum in opposition to DLL's petition. Dr. Rozentsvit argued DLL's petition must be denied, because DLL failed to present evidence of the asserted costs at trial. Dr. Rozentsvit also argued that DLL improperly raised the issue of costs in a "petition" instead of a "motion" pursuant to Pennsylvania Rule of Civil Procedure 227.1.

¶ 7 By order entered March 15, 2007, the court denied Dr. Rozentsvit's post-trial motion and DLL's petition to assess collection and legal costs. On April 9, 2007, DLL filed a *praecipe* to enter judgment after verdict. Dr. Rozentsvit timely filed her notice of appeal on April 10, 2007. On April 17, 2007, DLL timely filed its notice of appeal.[1] The trial court

1. In their notices of appeal, both parties purport to appeal from the trial court's March 15, 2007 order, denying their post-trial motions. Such an order is interlocutory and generally not appealable. *Brown v. Philadelphia College of Osteopathic Medicine,* 760

ordered the parties to file concise statements, pursuant to Pa.R.A.P. 1925(b). Thereafter, the parties timely filed their Rule 1925(b) statements.[2]

¶ 8 In her appeal, docketed at No. 866 EDA 2007, Dr. Rozentsvit raises two issues for our review:

WAS THE TRIAL COURT'S DECISION OF NOVEMBER 21, 2006 AT VARIANCE WITH THE ADMITTED AND/OR PROVEN FACTS PRESENTED AT TRIAL BOTH BY TESTIMONY FROM WITNESSES AND DOCUMENTARY EXHIBITS THAT THE LEASE AGREEMENT BETWEEN [DR.] ROZENTSVIT AND [DLL] WAS PREDOMINANTLY FOR SERVICES AS TO REQUIRE JUDGMENT IN FAVOR OF [DR.] ROZENTSVIT?

DID THE TRIAL COURT ERR IN THE APPLICATION OF LAW BECAUSE IT FAILED TO FIND THAT (I) THE LEASE ENTERED INTO WAS NOT A "FINANCE" LEASE UNDER PENNSYLVANIA'S UNIFORM COMMERCIAL CODE, ARTICLE 2A, LEASES ... BECAUSE PENNSYLVANIA'S UNIFORM COMMERCIAL CODE DID NOT APPLY TO THIS LEASE; (II) [DLL'S] CLAIMS WERE BARRED BY THE AFFIRMATIVE DEFENSE OF FAILURE OF CONSIDERATION; (III) THE LEASE WAS VOID *AB INITIO* OR, IN THE ALTERNATIVE, VOIDABLE AT THE ELECTION OF [DR.] ROZENTSVIT; (IV) THE LEASE WAS BREACHED BY [DLL'S] FAILURE TO SUBSTANTIALLY PERFORM, THEREBY DISCHARGING [DR.] ROZENTSVIT'S OBLIGATION TO PERFORM?

(Dr. Rozentsvit's Brief at 2).

¶ 9 "Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." *Baney v. Eoute,* 784 A.2d 132, 135 (Pa.Super.2001).

The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Id.* (internal citations omitted).

¶ 10 In her two issues, Dr. Rozentsvit asserts only contracts which are predominantly for the lease of "goods" will be governed by Pennsylvania's Uniform Commercial Code ("UCC"). Dr. Rozentsvit maintains her lease with DLL involved an ultrasound system comprised of hardware, software hosted at Vendor's website, ultrasound gel, and access to Vendor's website. Dr. Rozentsvit claims these components worked in concert, and the essence of the lease involved the software service rather than the equipment. Dr. Rozentsvit emphasizes the equipment had little value without the software, access to Vendor's website, and technical support. As such,

---

A.2d 863, 865 (Pa.Super.2000), *appeal denied,* 566 Pa. 632, 781 A.2d 137 (2001). Rather, the subsequent judgment is appealable. *Id.*

**2.** Specifically, the court ordered Dr. Rozentsvit to file a Rule 1925(b) statement by order entered April 12, 2007. The court ordered DLL to file its Rule 1925(b) statement by order entered April 16, 2007. DLL timely filed its Rule 1925(b) statement on April 19, 2007. Dr. Rozentsvit timely filed her Rule 1925(b) statement on April 24, 2007.

Dr. Rozentsvit complains the trial court erred in determining that the parties had entered into a finance lease under the UCC, because the lease involved both goods and services.

¶ 11 Rather than analyzing the lease under the UCC, Dr. Rozentsvit argues general contract principles apply. Dr. Rozentsvit maintains DLL's claims are barred by the affirmative defense of failure of consideration, because Dr. Rozentsvit did not receive the Scanpoint software, which was the consideration for which she had bargained. Absent Vendor's delivery of the software, Dr. Rozentsvit avers the lease was void *ab initio.* In the alternative, Dr. Rozentsvit asserts the lease was voidable, because DLL acted in bad faith by allegedly failing to disclose its status as a third-party financing company and by failing to assist Dr. Rozentsvit after she asked for help in obtaining the software from Vendor.

¶ 12 Dr. Rozentsvit also contends "parties to a contract [must] do and perform those things that according to reason and justice they should do to carry out the purpose for which the contract was made...." (Dr. Rozentsvit's Brief at 33). Dr. Rozentsvit claims DLL had an obligation to assist her in obtaining the software, because DLL "had the power *(via* its Purchase Order) to compel Vendor to provide its services...." (*Id.*). Because DLL did not help her obtain the software, Dr. Rozentsvit complains DLL failed to substantially perform. Dr. Rozentsvit concludes this Court must reverse the trial court's decision and enter judgment in her favor. We disagree.

¶ 13 Pennsylvania has adopted the UCC to, *inter alia,* "simplify, clarify and modernize the law governing commercial transactions." 13 Pa.C.S.A. § 1102(b)(1). The UCC defines a finance lease as follows:

§ 2A103. Definitions and index of definitions

(a) **Definitions.**—The following words and phrases when used in this division shall have, unless the context clearly indicates otherwise, the meanings given to them in this subsection:

* * *

"**Finance lease.**" A lease with respect to which:

(1) the lessor does not select, manufacture or supply the goods;

(2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and

(3) one of the following occurs:

(i) the lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract;

(ii) the lessee's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract;

(iii) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of a third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or

(iv) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee, in writing:

(A) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person;

(B) that the lessee is entitled under this division to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; and

(C) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

13 Pa.C.S.A. § 2A103(a). *See also De Lage Landen Financial Services, Inc. v. M.B. Management Co., Inc.,* 888 A.2d 895 (Pa.Super.2005) (holding lease agreement that explicitly stated it was finance lease, as defined in Article 2A of UCC, was finance lease even though lessee did not direct lessor to acquire goods or right to possession and use of goods from supplier).

¶ 14 The Comment to Section 2A103 elaborates on the roles of the parties to a finance lease:

A finance lease is the product of a three party transaction. The supplier manufactures or supplies the goods pursuant to the lessee's specification, perhaps even pursuant to a purchase order, sales agreement or lease agreement between the supplier and the lessee. After the prospective finance lease is negotiated, a purchase order, sales agreement, or

lease agreement is entered into by the lessor (as buyer or prime lessee) or an existing order, agreement or lease is assigned by the lessee to the lessor, and the lessor and the lessee then enter into a lease or sublease of the goods. **Due to the limited function usually performed by the lessor, the lessee looks almost entirely to the supplier for representations, covenants and warranties.** If a manufacturer's warranty carries through, the lessee may also look to that. Yet, this definition does not restrict the lessor's function solely to the supply of funds; if the lessor undertakes or performs other functions, express warranties, covenants and the common law will protect the lessee.

\* \* \*

**Subsection (i) requires the lessor to remain outside the selection, manufacture and supply of the goods;** that is the rationale for releasing the lessor from most of its traditional liability. The lessor is not prohibited from possession, maintenance or operation of the goods, as policy does not require such prohibition. To insure the lessee's reliance on the supplier, and not on the lessor, subsection (ii) requires that the goods (where the lessor is the buyer of the goods) or that the right to possession and use of the goods (where the lessor is the prime lessee and the sublessor of the goods) be acquired in connection with the lease (or sublease) to qualify as a finance lease.

13 Pa.C.S.A. § 2A103(a) Comment (emphasis added).

█ ¶ 15 Additionally, "[t]he party merely financing the transaction has no control over its manufacture, is not involved in the selection of the product nor in any way makes a representation as to its quality or soundness." *Nath v. National Equipment Leasing Corp.,* 497 Pa. 126,

132, 439 A.2d 633, 636 (1981). "Between the financier and the ultimate purchaser, it is usually the latter who selects the goods, negotiates for its purchase and has control over its use." *Id.*

¶ 16 Instantly, the parties' lease described three pieces of equipment: a Diagnostic Ultrasound bladder volume device with 60 months of "Scanpoint," a Diagnostic Ultrasound "flow device-urinary," and a "training pack." The lease extended for a term of sixty months, required monthly payments of $348.00, and gave the doctor the option of purchasing the equipment for $1.00 at the end of the term. Dr. Rozentsvit's payment obligations were "absolute, unconditional, and [were] not subject to cancellation, reduction, setoff or counterclaim." (Lease Agreement ¶ 1, dated 11/29/04, DLL's Trial Exhibit P–1).[3] A "Default and Remedies" provision provided that Dr. Rozentsvit would be in default if, *inter alia,* she failed to make a payment when due. The lease also addressed third-party maintenance and service costs:

> If Lease Payments include third-party maintenance and/or service costs, you agree that (i) [DLL is] not responsible to provide the maintenance or service, (ii) you will make all maintenance and service related claims to the third party, and (iii) any maintenance or service claims will not impact your Lease Payment obligations.

(*Id.* at ¶ 3).

¶ 17 Additionally, the lease contained the following "Miscellaneous" term:

> 9. **Miscellaneous:** You agree the Lease is a Finance Lease as defined in Article 2A of the Uniform Commercial Code ("UCC"). You acknowledge we have given you the Equipment supplier's

name. We hereby notify you that you may have rights under the supplier's contract and may contact the supplier for a description of these rights. **This lease was made in Pennsylvania ("PA"); is to be performed in PA and shall be governed and construed in accordance with the laws of PA.**

> \* \* \*

(*Id.* at ¶ 9) (emphasis in original). An acceptance term at the bottom of the lease stated: "The Equipment has been received, put in use, is in good working order and is satisfactory and acceptable." (*Id.* at "Acceptance"). Dr. Rozentsvit signed her name in the signature space under the "Acceptance" term, as well as in another space marked "Lessee Signature."

¶ 18 Here, the lease agreement expressly invoked Article 2A of the UCC and indicated that the lease constituted a finance lease. As the trial court noted:

> [T]he fact that these parties memorialized their agreement in a document entitled "Lease Agreement" does not in fact make them lessor and lessee as that relationship might ordinarily be understood with the attendant rights, obligations and duties of entities in a lessor/lessee relationship. On the contrary, as a "finance lease," the relationship of the parties is more closely akin to—or is exactly—that of lender and borrower in which relationship the obligations of the borrower are to make the payments required by the loan and the obligation of the lender is fully met when the funds required have been provided. [Dr. Rozentsvit] admittedly not having made those payments, we found

---

3. DLL's trial exhibit P–1 consists of two pages. The first page is a copy of the form lease signed by the parties. Some of this copy, however, is illegible, because the copy was made from microfiche. (N.T. Trial, 11/16/06, at 10). Thus, the second page of DLL's exhibit is a legible copy of an identical, unexecuted lease form. (*Id.*)

that she is indebted to [DLL] in the amount set forth in our decision.

(Trial Court Opinion, entered June 1, 2007, at 3). We accept this analysis. *See also De Lage Landen, supra* (holding lessee of copy machine breached finance lease which obligated lessee to make payments to lessor regardless of whether copy machine satisfied lessee's use requirements, where lessee accepted delivery of copy machine and made two payments under lease prior to willful default). Based upon the foregoing, the trial court's findings are supported by competent evidence, and the parties' agreement is a finance lease. *See Baney, supra.* Therefore, Dr. Rozentsvit is not entitled to relief on her claims. Accordingly, we affirm the court's decision to award DLL the amount of $18,260.40.

¶ 19 In its appeal, docketed at No. 928 EDA 2007, DLL raises one issue for our review:

WHETHER A DISTINCTION EXISTS REQUIRING A DIFFERENT PROCEDURE AS BETWEEN A CLAIM FOR ATTORNEY'S FEES AS COSTS ARISING FROM A CONTRACT, AND A CLAIM FOR ATTORNEY'S FEES AS COSTS ARISING FROM A STATUTE?

(DLL's Brief at 4).

■ ¶ 20 As a prefatory matter, Dr. Rozentsvit has filed a motion to quash or dismiss DLL's appeal. Dr. Rozentsvit contends claims for counsel fees are waived if they are not raised in a timely post-trial motion. Dr. Rozentsvit asserts DLL failed to raise the issue of counsel fees in a timely post-trial motion in the instant case. Dr. Rozentsvit insists DLL's petition to assess collection and legal costs did not equate to a post-trial motion under Rule 227.1, because the petition attempted to institute a new proceeding and did not allege trial court error. Dr. Rozentsvit concludes this Court must quash or, in the alternative, dismiss DLL's appeal. We disagree.

¶ 21 Rule 227.1 provides, in pertinent part, as follows:

**Rule 227.1. Post–Trial Relief**

(a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may

\* \* \*

(4) affirm, modify or change the decision; or

(5) enter any other appropriate order.

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefore,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

(c) Post-trial motions shall be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or non-suit in the case of a jury trial;

\* \* \*

If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.

(d) A motion for post-trial relief shall specify the relief requested and may request relief in the alternative. Separate reasons shall be set forth for each type of relief sought.

* * *

Pa.R.C.P. 227.1(a)-(d) (internal notes omitted).

¶ 22 Instantly, DLL's post-trial petition to assess collection and legal costs addressed the "Default and Remedies" clause in the lease, which provided "reasonable collection and legal costs" to DLL in the event of a breach by Dr. Rozentsvit. DLL claimed it had incurred $6,898.00 in counsel fees in pursuing its breach of contract and collection action against Dr. Rozentsvit. DLL also attached an affidavit from counsel and the appropriate billing records to support its claim. In conclusion, DLL requested the court to assess costs in the amount of $6,898.00 to Dr. Rozentsvit.

¶ 23 In substance, DLL's "petition to assess collection and legal costs" was intended to perform the same function as a motion pursuant to Rule 227.1. Had DLL simply labeled its petition as a "motion for post-trial relief," Dr. Rozentsvit could not dispute its validity. *See Gemini Equipment Co. v. Pennsy Supply Inc.*, 407 Pa.Super. 404, 595 A.2d 1211, 1214 (1991) (holding defendant did not waive issues by failing to file post-trial motions where defendant did file petition for reconsideration which was intended to function as post-trial motion). Moreover, DLL timely filed its petition on December 8, 2006, eight days after Dr. Rozentsvit filed her post-trial motion. *See* Pa.R.C.P. 227.1(c). Thus, we deny Dr. Rozentsvit's motion to quash or dismiss DLL's appeal.

■ ¶ 24 In its single issue, DLL asserts the "Default and Remedies" provision in the lease included an agreement between the parties to shift the cost of collection, including DLL's counsel fees, in the event of a default by Dr. Rozentsvit. DLL insists counsel fees are costs "which are taxed at the conclusion of the case, regardless of whether the [fee] shifting is accomplished by contract or statute."

(DLL's Brief at 10). DLL argues that it properly filed its petition to assess collection and legal costs **after** the court entered the verdict in favor of DLL. Moreover, DLL contends the language of the lease must be interpreted to mean that DLL could only recover counsel fees in the event that it prevailed at trial. DLL concludes this Court must reverse the order denying its petition to assess collection and legal costs and remand the matter for further consideration. We agree.

■ ¶ 25 "[Pennsylvania] has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Merlino v. Delaware County*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). In cases where parties to a contract agree to shift fees, "provisions for the payment of 'costs of collection' have often been held to include reasonable attorney's fees in the event that it is necessary to institute legal action to collect." *Wrenfield Homeowners Ass'n, Inc. v. DeYoung*, 410 Pa.Super. 621, 600 A.2d 960, 964 (1991). Additionally: "Taxable costs are generally payable incident to a final judgment, *i.e.*, after termination of the action by discontinuance or final disposition." *Miller Elec. Co. v. DeWeese*, 589 Pa. 167, 175, 907 A.2d 1051, 1056 (2006). *See also Joseph F. Cappelli & Sons, Inc. v. Keystone Custom Homes, Inc.*, 815 A.2d 643 (Pa.Super.2003) (recognizing right to counsel fees arose as result of favorable verdict in underlying litigation).

¶ 26 Instantly, the "Default and Remedies" provision in the lease agreement provided, in pertinent part:

7. **Default and Remedies:**

* * *

Upon default, we may: a) declare the entire balance of unpaid Lease Payments for the full Lease term immediately due and payable; b) sue you for and receive the total amount due on the Lease plus the Equipment's anticipated end-of-Lease fair market value ("FMV") or fixed price purchase option (the "Residual") with future Lease Payments and Residual discounted to the date of default at the lesser of (i) a per annum interest rate equivalent to that of a U.S. Treasury constant maturity obligation ... that would have a repayment term equal to the remaining Lease term, all as reasonably determined by us; or (ii) 3% per annum, **plus reasonable collection and legal costs, but only to the extent permitted by law;** c) charge you interest on all monies due at the rate of 18% per year from the date of default; d) require you to immediately return the Equipment to us or we may peaceably repossess it.

\* \* \*

(Lease Agreement ¶ 7, dated 11/29/04, DLL's Trial Exhibit P–1) (emphasis added).

¶ 27 Here, the remedies provision contained language that shifted DLL's counsel fees to Dr. Rozentsvit upon default. *See Wrenfield Homeowners Ass'n, supra.* DLL requested counsel fees in its complaint. Nevertheless, the trial court refused to award counsel fees. The court explained its decision, without citing to relevant authority, as follows:

At trial, [DLL] produced no evidence of its expenses of the attorneys' fees which it had incurred or what attorneys' fees would be reasonable. Accordingly, we did not include any amount for such damages in our award. After our decision was entered, [DLL] filed a petition to assess collection and legal costs. This case is not one in which [DLL] became entitled to these damages only after the decision was rendered nor is it one in which fees and costs are to be awarded by the court pursuant to a statute once a party prevails on a claim. Rather, the costs and fees are an element of damages to which [DLL] is entitled, if at all, by contract and, as such, are required to be pled **and proved** by the plaintiff as part of its case at trial. Having failed to introduce the necessary evidence at trial, [DLL] cannot now achieve that result by its proposed supplemental proceeding.

(Trial Court Opinion at 3–4) (emphasis in original).

¶ 28 Contrary to the trial court's assertions, legal fees were not an element of the damages which DLL had to prove at trial as part of its breach of contract case.[4] Rather, the contractual remedy of "reasonable collection and legal costs" was due DLL upon the court's finding of default. Further, the language in the lease itself did not require DLL's claim for costs to be tried during the case on its merits. As such, the right to counsel fees arose as a function of the favorable verdict in the underlying litigation. As a practical matter, DLL had to prevail on the verdict to obtain counsel fees. *See Miller Elec. Co., supra; Joseph F. Cappelli & Sons, Inc., supra.*[5] Accordingly, we affirm the court's

---

4. We emphasize that not all damages must be proven at trial. *See, e.g.,* Pa.R.C.P. 238 (stating plaintiff may file motion requesting delay damages no later than ten days **after** verdict or notice of decision).

5. Although these cases involved fee shifting pursuant to statute as opposed to contract, their reasoning applies with equal force to the facts of the instant case. Moreover, we agree with DLL's assertion that "[h]aving attorneys' fees decided upon application after trial presents a common sense approach ... and pre-

decision in favor of DLL in the amount of $18,260.42. Nevertheless, we vacate the judgment, because the court denied DLL's reasonable collection and legal costs. We remand the matter for the court to determine the proper amount of costs under the applicable lease term. Upon remand, the court can receive evidence from DLL, limited to the issue of reasonable collection and legal costs in the underlying litigation. The verdict should be molded to reflect the collection costs and judgment entered on the molded verdict.

¶ 29 Judgment vacated; case remanded for further proceedings. Jurisdiction is relinquished.

serves judicial economy by avoiding additional trial time with witnesses on attorneys' fees prior to having determined whether a party is 'prevailing,' thereby entitling such party to fees." (DLL's Brief at 16).