## In re MODERN STEEL TREATING COMPANY, Debtor.

### Bankruptcy No. 86 B 03530.

United States Bankruptcy Court, N.D. Illinois, E.D.

July 6, 1988.

3:87–0553, op. rend. January 12, 1988, 81 B.R. 897, 900 (Actions consolidated by order therein of September 28, 1987.)

Robert A. Filpi, Stack & Filpi, Chtd., Chicago, Ill., for Burton Graham.

Douglas J. Lipke, Lord, Bissell & Brook, Chicago, Ill., for Debtor.

Donald Spak, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Taylor Bank/Drovers.

Sandra Taliani Rasnak, Chicago, Ill., for U.S. Trustee.

Leo Feldman, Teller, Levit & Silvertrust, Chicago, Ill.

Murphy & Boyle, Chtd., Chicago, Ill.

Berman, Fagel, Haber & Maragos, Chicago, Ill.

A.R. Wells, Furst & Furst, Chicago, Ill.

Katten, Muchin, Zavis, Pearl, Greenberger & Galler, Chicago, Ill.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

This case is before the Court on the Motion of Burton Graham for the Payment of Rent. Mr. Graham was a fifty percent partner with George B. Glickley ("Glickley Sr.") in G & G Land Partnership ("G & G Land"), which owned the premises where the Debtor, Modern Steel Treating Company, is located pursuant to an oral lease. Mr. Graham is also a fifty percent share-holder in Modern Steel. Mr. Graham claims in his motion that he is entitled to 50% of the rents due from Modern Steel for the months of October, 1987 through February, 1988. Notwithstanding the Debtor's argument to the contrary, this Court has jurisdiction to decide Mr. Graham's motion. That motion, however, will be denied for the reason that whatever rent is payable by the Debtor is subject to an assignment of rents and therefore is not payable to Mr. Graham.

Mr. Graham and Mr. Glickley Sr. are the owners of real estate at 1010 West 122nd Street, Chicago, Illinois. Together, they formed the partnership which leased the land to Modern Steel. Modern Steel had been paying rent to G & G Land under a vague oral lease which did not fix a rental. So far as this court can determine, the amount of any month's rent is largely a matter of the Debtor's discretion. Whatever rent was paid to the partnership was divided equally between the two principals.

On March 6, 1986, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. According to the Debtor's monthly statements, rent payments (in varying amounts, as high as $15,000) were consistently made to G & G Land from the inception of the Chapter 11 case until October, 1987. In October and December, 1987, nothing was paid for rent, and in other months after October, the amounts paid were substantially less than in prior months. Mr. Graham claims that the reduction of rent payments coincided with a substantially equivalent increase in the salary paid to Mr. Glickley Sr. Mr. Graham also claims that prior to August, 1987, Glickley Sr. was taking more than his 50% share of the G & G Land rents, and therefore the partnership terminated by operation of law. In any event, Mr. Graham gave written notice that he was dissolving the partnership on August 28, 1987. Each partner was then individually entitled to his 50% share of the rents.

The Debtor has maintained a long banking relationship with Cole Taylor Bank/Drovers ("Drovers"). The Debtor is presently indebted to Drovers in the princi-

pal amount of $1,460,000. This debt is secured by the Debtor's assets and by the real estate jointly owned by Mr. Graham and Mr. Glickley Sr., and occupied by the Debtor. As additional security for the debt to Drovers, Mr. Graham and Mr. Glickley Sr. executed an assignment of rents to Drovers. In September 1987, Drovers exercised its assignment of rents and demanded that rents be paid directly to Drovers instead of to G & G Land or to Mr. Graham and Mr. Glickley Sr. Payments have been made to Drovers under cash collateral orders. It is not clear whether any rents have also been paid to Drovers. Drovers has objected to Mr. Graham's motion, asserting its rights under the assignment of rents.

The Debtor initially argues that the Bankruptcy Court does not have jurisdiction to hear this matter. Alternatively, the Debtor and Drovers argue that under the assignment of rents only Drovers is entitled to the rents and therefore, Graham's motion must be denied.

### Jurisdiction

Initially, the Debtor argues that this is neither a core proceeding nor a "related to" proceeding. The Debtor claims that this is merely a dispute between creditors that does not involve the Debtor. The Court disagrees.

The Debtor correctly cites *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987) for the proposition that disputes among creditors that do not involve property of the estate and do not affect the rights of any other creditors, do not fall under federal bankruptcy jurisdiction. Had this been a dispute among Drovers, Mr. Graham and Mr. Glickley Sr. individually, as the Debtor argues, then the analogy to *Xonics* would have been appropriate. That is not the case. Mr. Graham's motion requests an order directing the *Debtor* to pay rent to Mr. Graham. Disposition of the motion will affect the rights of the Debtor and may affect distributions to other creditors.

*In re PCH Associates*, 60 B.R. 870 (S.D. N.Y.1986), held that an application filed by a lessor which sought an order from the Bankruptcy Court directing the Debtor to pay rent to the lessor was a core proceeding under 28 U.S.C. § 157(b)(2)(A). There, the Debtor owned and operated a hotel which was located on land subject to a sale and leaseback agreement between the Debtor and the lessor. Since the lessor's motion sought payment of rent from the estate, the Court held that the action was for the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(A). Similarly, Graham's motion seeks payment of rent from the Debtor's estate. This Court's determination of whether Mr. Graham is entitled to the rents will certainly affect the administration of the estate in that any funds distributed to Mr. Graham pursuant to an order granting his motion will deplete the funds available to operate the Debtor's business and will deplete the funds available to other creditors. Accordingly, this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and this Court has the conferred authority to render a final decision on the motion.

### Payment of Rents to Graham

We therefore reach the substance of Mr. Graham's motion. Mr. Graham claims as "administrative rent" an amount equal to one-half the rent he claims should have been paid from September, 1987 through February, 1988. He calculates that the Debtor paid $12,016 before September (which appears to be an average, since the actual amounts varied) and therefore requests $6,008 for each month from September through February.

Mr. Graham makes several disturbing points. For example, it is odd that Mr. Glickley Sr.'s salary increased at the same time that rental payments decreased and that the increase in salary was approximately equal to the decrease in rental payments.[1] The concurrence of these events is

1. Mr. Graham in his written closing argument raised for the first time an objection to the payment of any salary to Mr. Glickley Sr. on the ground that this Court has never authorized Mr. Glickley's employment. Mr. Graham suggests that this Court *sua sponte* bar further salary payments. This Court declines that invitation, without deciding whether an insider's employ-

only partially explained by Modern Steel's financial improvement at the same time. It is also troubling that no rental payments were made by Modern Steel to Drovers after Drovers demanded that the rents be paid to it pursuant to the assignment of rents in September, 1987.

However, none of these serendipitous events help Mr. Graham recoup his lost rental payments. The fact remains that Mr. Graham and Mr. Glickley Sr. entered into a contract with Drovers, which gave the bank the right to demand the rental payments directly from Modern Steel. Since Drovers' has exercised that right, Mr. Graham has relinquished whatever right he otherwise might have had to receive rent from the Debtor. Mr. Graham may elect to challenge Drover's rights or pursue Mr. Glickley Sr. individually for the misappropriation of rents paid prior to September, 1987. Neither action would involve administration of the Debtor's estate or distribution of the Debtor's assets. The Bankruptcy Court would therefore not have jurisdiction over such claims. With respect to the claim that is before this Court for "administrative rent", as between Drovers and Mr. Graham, it is Drovers that has a right to receive such rent as the Debtor pays or may owe, not Mr. Graham (or, for that matter, Mr. Glickley, Sr.). Additionally, there is no written lease, no fixed rent and no evidence of the value of the use and occupancy of the premises. Therefore, there is no basis upon which this Court could require the Debtor to pay additional rent for past months, even if Mr. Graham had a right to receive it.

Accordingly, an Order will be entered denying Mr. Graham's motion for payment of rent.

ment requires prior Court approval or whether Mr. Glickley Sr.'s compensation is reasonable. Those issues have not properly been raised here.

Rather, this Court will direct the Clerk to send a copy of this opinion to the United States Trustee. The United States Trustee is requested to confer with counsel for the Debtor and Mr. Graham and to otherwise investigate the matters discussed in this opinion (and such other matters as may come to his/her attention). This Court will set the bankruptcy case for a status conference, at which time the United States Trustee may report to the Court.