**Tasso v. Young**

C.P. of Monroe County, no. 3317 Civil 1994.

*Thomas J. Newell,* for plaintiff.
*Maureen M. Eagen,* for defendant.

WALLACH MILLER, *J.,* July 9, 1996—

"There are plenty of recommendations on how to get out of trouble cheaply and fast. Most of them come down to this: Deny your responsibility."—Lyndon B. Johnson

The case presently before the court calls on us to address the unsettled and confounding area of limited tort liability law as it currently exists in our Commonwealth. This case also illustrates the sometimes uncomfortable relationship between the interests in reducing escalating insurance costs, protecting consumer interests, and recognizing some level of personal accountability for decisions that are made. Many cases similar to the instant dispute have been heard throughout the state in the preceding months, and have yielded a variety of outcomes. The facts of the case in the instant matter are as follows.

On September 15, 1994, vehicles driven by Patricia Phipps and defendant Marvin Young were involved in an accident on Route 196 in Mount Pocono, Monroe County, Pennsylvania. Plaintiff Maria Tasso was a passenger in the Phipps vehicle, which was struck from behind by defendant's vehicle. Plaintiff was not treated at the time of the accident, nor has she ever been hospitalized as a result of the accident. She was seen by

a doctor the day after the accident, and x-rays were taken. Plaintiff was diagnosed with cervical strain, and extra strength Tylenol and Motrin were prescribed.

Three days later, plaintiff presented to the Pocono Medical Center with complaints of pain. X-rays of her neck and back were taken, and plaintiff was diagnosed with back and neck strain. She was prescribed a neck brace and pain medication.

Thereafter, plaintiff was seen by Dr. Mahesh Chabria of Neurology Associates of Monroe County. An MRI revealed three bulging disks in plaintiff's neck and back. Plaintiff was referred to Dr. James Kim and began physical therapy on October 3, 1994, which continued for one month. After that, she was discharged with instructions to do exercises at home. Plaintiff was seen by the therapist in May 1995 for a follow-up visit, at which time she reported occasional shooting pain on her left side.

Since May 1995, plaintiff has not seen a medical practitioner for her accident-related injuries, nor has she taken any prescription pain medication. Through this course of treatment, plaintiff missed approximately 15 days of work. She has not missed work due to her accident-related injury since mid-October 1994. In response to interrogatories, plaintiff stated that she was paid by her employer for the 15 days she was unable to work, and that her automobile insurance carrier had paid for her medical expenses.

Regarding the impact that these injuries had on plaintiff's life, she declares that her life was "drastically changed" for roughly four months following the accident. Plaintiff states that she was unable to perform housework, dance, have a normal sex life, and sit or stand for long periods of time. These problems, according to plaintiff, resolved themselves in January

1995. In July 1995, when asked by deposition if she was still experiencing any physical effects from the accident, plaintiff stated, "Only when the weather's bad that I feel the pain down the leg and the hip, a pinched nerve shoots down. But that's every now and then."

At the time of the accident, plaintiff owned a registered automobile with automobile insurance coverage provided by Progressive Companies. Plaintiff secured this insurance as a member of the assigned risk plan. The assigned risk plan is a program which provides for the equitable apportionment of assigned risks among insurers. 75 Pa.C.S. §1702. Assigned risks are those persons who would have difficulty obtaining automobile insurance coverage on the open market. The legislature has mandated that "all motor vehicle liability insurers *shall* subscribe [to the assigned risk plan] and shall participate in the plan." 75 Pa.C.S. §1741.

As part of her automobile insurance coverage with Progressive, plaintiff exercised her right to select the limited tort option. By selecting this option, plaintiff knew she would be paying a smaller premium. In exchange for this savings, plaintiff agreed that if she were injured in an automobile accident, she would only be allowed to recover for noneconomic loss if she was "seriously injured."

The statutory provisions governing the limited tort election are part of the Motor Vehicle Financial Responsibility Law enacted by the Pennsylvania Legislature in 1990. See 75 Pa.C.S. §1701 et seq. The limited tort election form provided by Progressive and executed by plaintiff complies with 75 Pa.C.S. §1791.1, entitled "Disclosure of Premium Charges and Tort Options" as well as with applicable Pennsylvania Insurance De-

partment regulations. It does not, however, comply with 75 Pa.C.S. §1705, entitled "Election of Tort Options."

Based on the foregoing, plaintiff filed a complaint on December 22, 1994, and an amended complaint on March 31, 1995. She seeks recovery for pain and suffering, past and future medical expenses, past and future earnings, and loss of life's pleasures. Her husband, Darrell Tasso, seeks recovery for loss of consortium. Defendant answered the amended complaint, and on December 28, 1995, filed the instant motion for summary judgment. Supporting briefs and oral arguments have been entertained, and the matter is now ripe for disposition.

We begin our analysis of the instant motion with a brief review of the law governing motions for summary judgment. When ruling on a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits. Pa.R.C.P. 1035(a). In order to prevail on a motion for summary judgment, the moving party has the burden of proving that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468 (1979); *Overly v. Kass,* 382 Pa. Super. 108, 110, 554 A.2d 970, 971 (1989).

Further, summary judgment is only properly granted in cases where the right to judgment is clear and free from doubt, with any existing doubts being resolved in favor of the non-moving party. *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991); *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). Once a motion for summary judgment is made and supported under these principles, however, a non-moving party may not rest upon the

mere allegations or denials of his pleading. Rather, the non-moving party must set forth specific facts demonstrating that there is a genuine issue for trial. If he fails to do so, then summary judgment, if appropriate, shall be entered against him. Pa.R.C.P. 1035(d). With these standards in mind, we now turn to defendant's motion for summary judgment.

Defendant presents a twofold argument to support his contention that summary judgment is proper in this case. First, defendant argues that the limited tort election exercised by plaintiff was validly made, and that she is bound by this election. Second, defendant argues that the injuries sustained by plaintiff do not reach the threshold of a "serious injury," and so her limited tort election prevents her from seeking compensation for her injuries.

Plaintiff, contrarily, argues that her limited tort election was not validly made, and that she should therefore be considered a full tort coverage insured. In the alternative, plaintiff contends that even if her limited tort option election is found to be valid, she should still be allowed to recover on the grounds that the injuries she sustained were "serious injuries," and for which recovery is allowed under the MVFRL.

At the heart of the parties' dispute is which of two different—and seemingly irreconcilable—sections of the Motor Vehicle Code should govern in this case. Both sections are contained within the MVFRL, and address the notice an insurer is required to provide an insured regarding full tort and limited tort options.

Defendant asserts that 75 Pa.C.S. §1791.1(b) should control. This section states that it applies to "applications for original coverage for private passenger motor vehicle insurance and every renewal thereafter," and provides in pertinent part:

*"Notice of tort options*

"The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

*"(A) 'Limited tort' option*—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury,' as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

*"(B) 'Full tort' option*—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers. . . .

*"Additional information*

"Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request

for and provision of information by telephone." 75 Pa.C.S. §1791.1(b), (d).

In further support of his position, defendant cites the policy statement issued by the Insurance Department, which instructs insurance companies to use limited tort option forms modeled after the language contained in 75 Pa.C.S. §1791.1. 31 Pa. Code §68.106-108. See *Pestcoe v. Nisenzone,* 30 Phila. 194 (1995); 27 D.&C.4th 26 (1995). The Insurance Department is statutorily charged with administering and enforcing the provisions of the MVFRL, and with promulgating the rules and regulations necessary to carry out this responsibility. 75 Pa.C.S. §1704(b). As the court noted in *Pestcoe v. Nisenzone,* the regulations promulgated by the Insurance Department are as binding as the statute under which they are adopted. Further, the courts must accord these regulations substantial deference, and may only disregard these regulations where they are "clearly erroneous." *Id.*

Plaintiff, on the other hand, argues in effect that both 75 Pa.C.S. §1791.1 and the policy statement issued by the Insurance Department are clearly erroneous, and that 75 Pa.C.S. §1705 should control the instant dispute. Section 1705 states that it applies to "the first issuance" and "the first renewal of a private passenger motor vehicle liability insurance policy," and contains virtually the same language as section 1791.1(b). There are, however, two important additions. Following the text of paragraph (A) is the statement, "The annual premium for basic coverage as required by law under this 'limited tort' option is $ ." Following the text of paragraph (B), likewise, is the statement, "The annual premium

for basic coverage as required by law under this 'full tort' option is $          ."

The inclusion of the cost comparison language in section 1705 is vital to the instant case for the following reason. The limited tort option form executed by plaintiff mirrors the language contained in section 1791.1; it does not, however, contain the additional cost comparison language provided for in section 1705. Therefore, if we find that section 1705 applies, then the limited tort option form executed by plaintiff would not be adequate notice, because it did not provide her with the requisite cost comparison. Under the MVFRL, plaintiff would be deemed a full tort option insured, and would be allowed to recover on a theory of noneconomic loss.

On the other hand, if we find that section 1791.1 applies, then the limited tort option form executed by plaintiff would be adequate notice. Under this scenario, plaintiff would be bound by her limited tort election and would not be allowed to recover under any theory of noneconomic loss.

After a careful review of these competing provisions, we find that section 1791.1 is the section that controls in the instant dispute. In so ruling, we note that several of our fellow courts have ruled to the contrary in similar situations. See *Pestcoe v. Nisenzone, supra; Thomas v. Rupp,* 30 D.&C.4th 231 (1996); *Sanfrantello v. Galvin,* (C.P. Bucks 1996); *West v. Gustafson,* 29 D.&C.4th 434 (1996). Our understanding of these decisions is that they are based primarily on theories of consumer protection and public policy, and this court recognizes the importance of these concepts. At the same time, however, we think consumer protection must be counterbalanced by some measure of personal responsibility on the part of the consumer. Hence, we find the consumer protection

argument is inapposite to the situation confronted by this court. Also, we take notice of decisions that have ruled without opinion in a manner which appears to support our holding today. See *Azaria v. Sacks,* 32 D.&C.4th 297 (1996); *Angelo v. Cavarocchi,* (C.P. Delaware 1995).

In the instant action, we have an insurance company who was statutorily compelled to provide insurance coverage to plaintiff, a recognized "assigned risk." Being so compelled to provide this coverage, Progressive offered a policy to plaintiff. As part of her choice of coverage, plaintiff voluntarily elected the limited tort option and lower payment, and executed this election on a form provided by Progressive. The form provided by Progressive was precisely the form that the Insurance Department had mandated that the insurance companies provide to their insureds as documentation of their limited tort election. Had plaintiff wanted an exact cost comparison of the differences in the tort elections, she need only have asked, and Progressive would have been statutorily compelled to provide this information. Plaintiff did not request this information.

Now, despite the fact that Progressive did precisely what it was instructed to do, plaintiff is claiming that she did not make a valid waiver of her full tort option. On the other hand, it is not Progressive that will bear the burden for its compliance with the applicable regulations; rather, it is the defendant. Is the issue one of consumer protection or consumer responsibility?

Also, if we find that plaintiff is a full tort insured, would this not vitiate the stated purpose of the MVFRL, to wit, reducing the cost of automobile insurance? Plaintiff vigorously argues that she has a right as a consumer to be protected. And from what does she wish to be protected? We suggest that she is asking to be protected

from the consequences of a decision she knowingly, voluntarily, and intelligently made. We decline to do so. As the saying goes, "You get what you pay for." It is time that plaintiff acknowledge the coverage for which she paid—or, more importantly, for the coverage for which she did not pay.

Having determined that plaintiff is bound by her limited tort election, we must next determine if she has sustained a "serious injury." "Serious injury" is statutorily defined as death, serious impairment of body function, or permanent serious disfigurement. See section 1702. If plaintiff has sustained such an injury, then she is entitled to recover for noneconomic injuries, notwithstanding her limited tort election. See section 1791.1(b).

The Superior Court recently ruled that the question of whether a plaintiff has sustained "serious injury" is a question of law to be determined by the court. *Dodson v. Elvey*, 445 Pa. Super. 479, 484, 665 A.2d 1223, 1226 (1995), *alloc. granted*, 544 Pa. 608, 674 A.2d 1072 (1996). Further, the Superior Court has adopted a standard to be used when determining if there has been a "serious injury." The standard articulated by the Superior Court provides:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) what body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . In determining whether the impairment was serious, several factors should be

considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." *Dodson v. Elvey, supra* at 499, 665 A.2d at 1233-34, quoting *DiFranco v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986).

With this standard in mind, and viewing the pleadings, depositions and interrogatories in the light most favorable to the plaintiff, we determine that the injuries she sustained do not constitute a "serious impairment of body function," and thus do not qualify as "serious injury." Plaintiff has never been hospitalized for the injuries she sustained from the automobile accident, and missed only 15 days of work. She wore a neck brace for one month, underwent physical therapy for one month, and was prescribed pain medication. She herself admits that her ailments resolved themselves within a four month time frame, and that she only occasionally experiences leg pain. Given this, we find that plaintiff has not presented any evidence that she has sustained a "serious injury," and therefore she may not proceed under any theory of noneconomic loss.

In so holding, we note that our finding that plaintiff's injuries do not fall within the definition of "serious injury" is consistent with decisions by the Superior Court and our fellow courts of common pleas, as to what injuries they have found met—and not met—the statutory definition of "serious injury." See *Dodson v. Elvey, supra; Murray v. McCann,* 442 Pa. Super. 30, 658 A.2d 404 (1995); *Lalena v. Murray,* (C.P. Bucks 1995); *Washington v. Baxter,* (C.P. Lancaster 1995).

With regard to plaintiff's claims for past and future lost earning capacity, we note her answer to the following interrogatories:

"(41) If you claim you have a permanent injury that affects your earning capacity, please state.

"Answer: No.

"(44) Please state whether you claim that the injuries suffered in the accident will cause future loss of earnings or impairment of earning capacity.

"Answer: No."

We also note that plaintiff concedes that she was reimbursed for her 15 sick days by her employer, and that she last missed work due to her injuries in October 1994. Plaintiff has failed to present any evidence to suggest that she may suffer the loss of future earnings due to her injury. As such, she has not presented a viable claim for compensable loss of past or future earning capacity, and summary judgment is appropriate on this count.

Similarly, as to her claims of compensable loss due to medical expenses, plaintiff stated that her medical expenses were paid by her insurance company. Also, she has failed to present any evidence that she may be subject to future medical expenses associated with her injuries. Consequently, her claim as to this count, along with her co-plaintiff's claim for loss of consortium, are properly subject to summary judgment.

Thus, we enter the following order.

## ORDER

And now, July 9, 1996, defendant's motion for summary judgment is granted.