John E. BALCZON, Plaintiff,

v.

MACHINERY WHOLESALERS CORP., E.W. Bliss Company, Eaton Corporation, Cutler–Hammer Production, a division, Defendants.

MACHINERY WHOLESALERS CORP., Third–Party Plaintiff,

v.

PRESTOLITE ELECTRIC, INC., Auto–Lite Battery Corporation, Owen–Dyneto Division, Third–Party Defendants.

No. Civ.A. 94–237E.

United States District Court, W.D. Pennsylvania.

Feb. 13, 1998.

W. Patrick Delaney, MacDonald, Illig, Jones & Britton, Erie, PA, for plaintiff John E. Balczon.

Craig A. Markham, Elderkin, Martin, Kelly & Messina, Erie, PA, for defendant and third-party plaintiff Machinery Wholesalers Corp.

Louis Anstandig, Anstandig, McDyer, Burdette & Yurcon, Pittsburgh, PA, for defendant E.W. Bliss Company.

James T. Marnen, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for defendant Eaton Corporation, Cutler–Hammer Production, a division.

Randy K. Hareza, Burns, White & Hickton, Pittsburgh, Pa, for third-party defendants Prestolite Electric, Inc. and Auto–Lite Battery Corporation, Owen–Dyneto Division.

## OPINION

COHILL, Senior District Judge.

### I. Background

This negligence and strict liability action was brought by Plaintiff John E. Balczon against defendants Machinery Wholesalers Corporation ("Machinery Wholesalers"), E.W. Bliss Inc. ("Bliss"), and Cutler–Hammer Products, a division of the Eaton Corporation ("Cutler–Hammer"). Mr. Balczon's complaint, alleging personal injury as a result of an accident involving a Bliss press, was filed in the Court of Common Pleas of Erie County, Pennsylvania, and was removed to this Court in September 1994. Machinery Wholesalers subsequently impleaded third party defendants Prestolite Electric, Inc. ("Prestolite") and its predecessor company, Auto–Lite Battery Corporation, Owen–Dyneto Division ("Auto–Lite"). Machinery Wholesalers filed a cross claim against Bliss demanding indemnity and/or contribution in the event Machinery Wholesalers is found to be liable to the plaintiff.

Presently pending before this Court are three motions for summary judgment. The first, filed by Machinery Wholesalers, seeks summary judgment on the grounds that: (a) plaintiff assumed the risk of his injuries, and (b) Machinery Wholesalers was not a "seller" as that term is defined in Section 402A of the Restatement (Second) of Torts. Machinery Wholesalers subsequently filed an Amended Motion for Summary Judgment on the grounds that the subject press was not defective. The third motion for summary judgment was filed jointly by Prestolite and Auto–Lite, which, like Machinery Wholesalers, argue that they are not "sellers" as that term is defined by Section 402A of the Restatement (Second) of Torts.

The following facts are not in dispute. Bliss, located in Hastings, Michigan, manu-

factured the press in 1950 and sold it new in that same year to third party defendant, Auto–Lite, located in Lockland, Ohio. At the time of the purchase by Auto–Lite, the press contained only electric push button controls and did not contain any foot pedals or controls. Auto–Lite subsequently sold the press to it successor, Prestolite, located in Wagoner, Oklahoma, which used the press in its business until 1983. Somewhere between 1975 and 1978, a replacement control system was installed on the press in accordance with changes in Occupational Safety and Health Administration standards. The replacement control included dual palm buttons and foot control methods of operation. Cutler–Hammer was the manufacturer of the foot pedal control switch that was made part of the press. Neither Prestolite nor Auto-lite were in the business of selling, distributing and/or manufacturing presses.

In 1983, Prestolite began to liquidate the surplus machinery that it owned, and resold the press to Lakeview Forge, located in Erie, Pennsylvania, using Machinery Wholesalers as its "broker." Machinery Wholesalers is located in Miami, Florida, and is in the business of buying and selling used equipment. Its exposure to the Bliss press was fleeting, and in fact, the press was purchased by plaintiff's employer before Machinery Wholesalers paid Prestolite.[1] Machinery Wholesalers never had physical possession of the press and the press was never moved to or stored in a facility controlled or owned by Machinery Wholesalers. Machinery Wholesalers never had any involvement in the design or manufacture of the press and, prior to the 1983 sale of the press, never had any prior business dealings with either Prestolite or Lakeview Forge. Affidavit of Mark Fields in Supp. of Summ. J. Mot. of Machinery Wholesalers at ¶¶ 5–9. Lakeview Forge was in possession of the Bliss press for eight years until the plaintiff was injured in 1991.

The injury occurred as follows. On October 2, 1991, Mr. Balczon, an employee of Lakeview Forge, placed his left hand within the operating point of the press while performing a die adjustment. Prior to performing the adjustment, he turned off one of the two electrical power switches which energized the press. The main power switch, which supplied power to the foot pedal as well as to other components, was not deactivated. Mr. Balczon did not follow other recommended safety measures in that he did not wait for the flywheel to stop rotating, did not place safety blocks in position and did not switch the electrical safety box to the dual button position. It appears that Mr. Balczon's foot then made contact with the foot pedal, causing the press to cycle and the ram to strike the plaintiff's left hand, which was in the die area. His hand was crushed and his left middle finger amputated.

Count I of the Complaint alleges strict liability and negligence against Machinery Wholesalers; Count II alleges strict liability against Bliss; and Count III alleges strict liability and negligence against Cutler–Hammer. Count I of the third party complaint asserts theories of strict liability and negligence against third party defendant Prestolite. Count II of the third party complaint asserts theories of strict liability and negligence against third party defendant Auto–Lite.

■ By Order dated July 30, 1996, we granted summary judgment in favor of co-defendant Bliss and ordered that all cross-claims against Bliss be dismissed with prejudice, on the basis that the addition of a foot pedal, after the subject press left Bliss's control in 1950, constituted a significant change in the press, and thus, the press did not reach the user, Lakeview Forge, in the same condition as originally sold in 1950, as required for liability under the Restatement (Second) of Torts § 402A. We also rejected plaintiff's contention that the cause of the accident was the defective design or configuration of the electrical circuitry of the press,

1. On June 20, 1983, Machinery Wholesalers billed Lakeview Forge for the subject press via invoice. The sale by Prestolite to Machinery Wholesalers is documented in a purchase order and vendor's agreement dated June 22, 1983. Lakeview Forge paid Machinery Wholesalers directly for the subject press, in the amount of $17,500 .00, by check dated one day prior to this purchase order, June 21, 1983. Exhibits A–D to Pl.'s App. of Exs. in Opp'n to Machinery Wholesaler Corporation's Mot. for Summ.J.

which allowed the press to activate and cycle after the drive motor had been turned "off". When Bliss sold the press, the ram would not cycle unless the dual hand buttons were activated. Thus, the activation of these buttons would have required the operator's hands to be out of the area of danger; the machine could not cycle while the operator's hands were in the area of danger. The posted warnings on the press, if followed, would have allowed for the safe operation of the press. Mr. Balczon testified that he was aware of this warning sticker on the press. "Where warning is given, the seller may reasonably assume that it will be read and heeded." Restatement (Second) of Torts § 402A cmt.j (1965); *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984). The determination of whether a warning is adequate and whether a product is "defective" due to inadequate warnings are questions of law to be answered by the trial judge. *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186, 190 (1997).

## II. Discussion

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the non-moving party. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.1995). The non-moving party must then go beyond the pleadings and designate facts showing that a genuine issue of material fact remains for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### a. "Sellers" under Section 402A

As a federal court sitting in a diversity case, we will apply the substantive law of the state's highest court. *Erie R. Co. v. Tomp-kins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pennsylvania has adopted § 402A of the Restatement (Second) of Torts. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). It provides that:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965). Comment F to that section reads as follows:

> f. Business of selling. The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. . . .

In explaining the justification for strict liability, the Restatement notes that

> public policy demands that the burden of accidental injuries caused by products intended for consumption be placed on those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A cmt.c (1965).

Pennsylvania courts have extended the term "seller" to include anyone who markets a product by sale, lease or bailment. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736, 738–39 (1977). A "seller" includes "[a]ll suppliers of a defective product in the chain of distribution, whether re-

tailers, partmakers, assemblers, owners, sellers, lessors or any other relevant category." *Malloy v. Doty Conveyor,* 820 F.Supp. 217, 220 (E.D.Pa.1993), *citing Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615, 621 (1983).

The concept is not without its practical limits, however. For example, although in *Francioni,* the Pennsylvania Supreme Court held that the lessor under the terms of a conventional or "true lease" is a supplier within the meaning of Section 402A, it distinguished the lessor under the terms of a lease intended as security or one designed solely for financing purposes. *Nath v. National Equipment Leasing Corp.,* 497 Pa. 126, 439 A.2d 633 (1981).

> That which provides the basis for fastening liability upon suppliers of products is that the supplier or manufacturer is the one that has the control over the product and places it within the stream of commerce. The party merely financing the transaction has no control over its manufacture, is not involved in the selection of the product or in any way makes a representation as to its quality or soundness.

*Id.* at 636.

Machinery Wholesalers, Prestolite and Auto–Lite each rely upon *Musser v. Vilsmeier Auction Co., Inc.,* 522 Pa. 367, 562 A.2d 279 (1989) to support their argument that they are not sellers under Section 402A. In *Musser,* Pennsylvania Supreme Court held that auctioneers are not subject to strict liability under that section of the Restatement because an auctioneer serves as an agent for the seller for a specific narrow purpose and bears no relationship to the dealer or manufacturer sufficient to achieve the Restatement's purpose of protecting the buyer from defective manufacture. *Id.* at 283.

> The auction company merely provided a market as the agent of the seller. It had no role in the selection of the goods to be sold, in relation to which its momentary control was merely fortuitous and not undertaken specifically. Selection of the products bought was accomplished by the bidders, on their own initiative and without warranties by the auction company....

Nor does [the auctioneer] have direct impact upon the manufacture of the products he exposes to bids, such as would result from continuous relationships with their producers and which would be expected to provide him with influence over the latter in acting to make products safer.

*Id.* at 282, *citing Nath,* 439 A.2d at 636.

In *Oscar Mayer Corp. v. Mincing Trading Corp.,* 744 F.Supp. 79 (D.N.J.1990), a food processing company brought an action against a supplier of peppercorns for undetected defects in the peppercorns. The supplier filed a third-party complaint against the spice broker and a seller. The district court held that the broker, which acted as an intermediary between the seller and the buyer of the peppercorns was not within the "chain of distribution" for purposes of attributing responsibility under the doctrine of strict liability in tort. *Id.* at 84–85. The court reasoned that a broker (1) has no control over the product, whether by manufacture, packing or marketing; (2) is not an active participant in its chain of distribution; (3) cannot recapture the expense of an occasional defective product by an increase in the cost of the product; and (4) cannot exert pressure on the manufacturer or supplier to ensure the safety of the product. *Id.*

Similarly, in a case involving a punch press, the defendant's president testified that the firm purchased a lot of the machines at an auction with the specific intention of selling some of them. The firm had "bought and resold used industrial machinery" at least twice besides the occasion when it bought the lot including the machine that injured the plaintiff, and each time had "realized a profit." The New York appellate court concluded that the trial court had properly let the jury decide "whether the sale of used punch presses was a regular part of [the defendant's] business," but the New York Court of Appeals reversed. That court focused on the fact that the press sold to the plaintiff's employer was never unloaded at the defendant's plant and was in its possession for only about an hour until the employer took possession of it. In that context, the court of appeals concluded, the evidence did not support a finding that the defendant had "en-

gaged in sales of equipment as a 'regular part of its business.'" *Stiles v. Batavia Atomic Horseshoes, Inc.,* 174 A.D.2d 287, 579 N.Y.S.2d 790, 792–93 (1992), *rev'd,* 81 N.Y.2d 950, 597 N.Y.S.2d 666, 613 N.E.2d 572 (1993).

■ The Pennsylvania Supreme Court has set forth four factors to consider when determining whether strict liability under § 402A should be extended to a particular party. They are:

(1) whether the defendant is the only member of the marketing chain available to the injured plaintiff for redress;

(2) whether the imposition of strict liability upon the defendant serves as an incentive to safety;

(3) whether the defendant will be in a better position than the consumer to prevent the circulation of defective products; and

(4) whether the defendant can distribute the cost of compensating for injuries resulting from defects by charging for it in his business.

*Francioni,* 372 A.2d at 739; *Musser,* 562 A.2d at 282.

■ After carefully reviewing the relevant case law and the undisputed facts of this case, we hold that Machinery Wholesalers is not a "seller" within the definition as proscribed by the Restatement, and thus, cannot be held strictly liable in tort for Mr. Balczon's injuries. Machinery Wholesalers had no control or involvement in the manufacture or design of the Bliss press, was not directly involved in the selection of the press by Lakeview Forge, made no representation as to its quality or soundness, and had only momentary control over the press. It never had physical possession of the press and the press was never moved or stored in a facility controlled or owned by Machinery Wholesalers.

We believe that when faced with the same question, the Pennsylvania Supreme Court would agree with this holding. To address the four-prong test set forth in *Musser,* 562 A.2d at 282–83, we note that Machinery Wholesalers is not the only member of the alleged marketing chain available to Mr. Balczon for redress, is not in the business of designing and/or manufacturing the product at issue, and there is no ongoing relationship between Machinery Wholesalers and the manufacturer of the press, beyond the immediate sale to Lakeview Forge. We note that although Machinery Wholesalers concedes that it could have passed on the costs of liability to consumers, the Pennsylvania Courts have held that absent the three other factors, there is should be no strict liability. *Id.* at 283.

■ We will also order that all claims against Auto–Light and Prestolite alleging strict liability be dismissed. We note that, in addition to the case law cited above, the Restatement provides some guidance:

The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business.... Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it.

Restatement (Second) of Torts § 402A cmt. f (1977). The test used for determining if a party is a seller for the purposes of strict liability is whether "[i]t carried on an established and well recognized business which has been a regularly maintained activity on its part." *Acevedo v. Start Plastics, Inc.,* 834 F.Supp. 808, 812 (E.D.Pa.1993).

■ From the time Auto–Lite acquired the press in 1950 from Bliss until its liquidation sale in 1983, the Bliss press was used as a part of a manufacturing process, and essentially compressed pole pieces that were a part of motors being manufactured for automobiles. Neither Prestolite nor Auto–Lite was in the business of selling, distributing and/or manufacturing Bliss presses, did not have an ongoing relationship with Bliss, and could not influence the manufacturing process of the press. *See* Aff. of Don Breed in Supp. of Mot. for Summ. J. Filed on Behalf of Prestolite and Auto–Lite at ¶¶ 8–9. There is no evidence that these companies ever advertised or marketed the Bliss press or that the transfer of ownership to Lakeview Forge was anything other than an iso-

lated sale. Although it is conceivable that the economic cost of liability could be passed along by increasing the price charged to the buyer, again, this factor standing alone is insufficient to justify a finding of potential liability under Pennsylvania law. *Musser,* 562 A.2d at 283. At most, Prestolite and Auto–Lite were occasional sellers.

To hold Prestolite and Auto–Lite strictly liable in this case would lead to an unjust, uneconomic result. "Owners of perfectly good and reusable products will junk them rather than risk product liability for things that simply pass through their hands," and that would be "economic waste." *Bevard v. Ajax Mfg. Co.,* 473 F.Supp. 35, 38 (E.D.Mich. 1979).

If the Supreme Court of Pennsylvania were presented with the facts of this case we predict that the court would hold that Machinery Wholesalers, Prestolite and Auto–Lite cannot be found strictly liable under § 402A of the Restatement (Second) of Torts.

### b. *Assumption of Risk and Design Defect*

■ Machinery Wholesalers argues that there is no genuine issue of material fact that Mr. Balczon assumed the risk of his injuries and thus, it cannot be held strictly liable in tort. We will deny this portion of the motion on the grounds that the question of assumption of risk is a factual issue to be decided by the jury, *Wagner v. Firestone Tire & Rubber Co.,* 890 F.2d 652, 657 (3d Cir.1989) (applying Pennsylvania law), and there are sufficient issues of material fact to allow the jury to decide that Mr. Balczon did not assume the risk of his injuries.

■ The plaintiff has submitted evidence that (i) Mr. Balczon did not fully understand the specific risk involved, (ii) he did not voluntarily choose to encounter the risk, and (iii) the circumstances surrounding the accident do not manifest a willingness to accept the risk. *Long v. Norriton Hydraulics, Inc.,* 443 Pa.Super. 532, 662 A.2d 1089 (1995); *Hardy v. Southland Corp.,* 435 Pa.Super. 237, 645 A.2d 839 (1994). For example, Mr. Balczon has testified that his injury happened after he pushed the black "off" button

on the press, and that he believed at the time that the black button shut off everything on the press, including the motor, the pedal which operated the ram, and the foot pedal to the machine itself. Balczon Dep. at 58, 86–87, 136. He testified that he did not know that the machine would operate if someone touched the foot pedal if the fly wheel was operating after the black button had been pushed to turn the machine off. He stated, "I assumed I turned the controls off, turned the controls of the pedal off." *Id.* at 166. We hold that this evidence creates a genuine issue of material fact regarding assumption of risk.

In support of its motion, Machinery Wholesalers relies upon our previous ruling, Opinion and Order dated July 30, 1996, that Bliss could not be held strictly liable to Mr. Balczon because the product underwent a substantial change after Bliss marketed and sold the product in 1950. In that opinion we stated that the warning pasted onto the press at the point of operation "was adequate regarding [the press'] present use" and thus, the product was not defective. Opinion and Order dated July 30, 1996 at 9. This is a separate question from assumption of risk; before an assumption of risk defense can be considered, there must first be a determination of whether the product was defective as a result of inadequate warnings or design defect. Liability for failure to warn can be an independent basis for liability, not requiring the jury to find a design defect. *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85, 92–93 (3d Cir.1976) (applying Pennsylvania law). Our July 30, 1996 opinion has since been bolstered by the Pennsylvania Supreme Court's subsequent decision in *Davis v. Berwind Corp.,* 547 Pa. 260, 690 A.2d 186 (1997). The *Davis* opinion, however, does not hold that the defense of assumption of risk is one and the same as a defect arising from failure to warn.

We therefore will deny this portion of Machinery Wholesaler's Motion for Summary Judgment.

In view of the foregoing, we will deny as moot Machinery Wholesaler's Amended Motion for Summary Judgment.

An appropriate Order follows.

## *ORDER*

AND NOW, to-wit, this 13th day of February 1998, for the reasons set forth in the accompanying opinion, it is hereby ORDERED, ADJUDGED and DECREED that the Motion for Summary Judgment (Doc. 36) is hereby GRANTED in part and DENIED in part; the Amended Motion for Summary Judgment (Doc. 46) filed by Machinery Wholesalers be and the same hereby is DENIED as moot.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Prestolite Electric and Auto–Lite Battery (Doc.41) be and the same hereby is GRANTED.

IT IS FURTHER ORDERED that the parties shall appear before the Court for a Pretrial Conference on March 19, 1998 at 9:00 a.m. in Courtroom B, the United States Post Office & Courthouse, Erie, Pennsylvania. Counsel are advised that they should have the authority to negotiate a settlement on behalf of their respective clients.